IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MELODY J. WASSON,

Plaintiff,

v. CASE NO. 1:11-cv-214-GRJ

MICHAEL J ASTRUE, Commissioner of Social Security,

Defendant.

_______________________________/

**ORDER**

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Titles II and XVI of the Social Security Act. (Doc. 1). The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 12 & 13). The parties have consented to have the undersigned, a U.S. Magistrate Judge, conduct all proceedings in this case. (Docs. 6 & 7.) For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 18, 2006, alleging disability since March 1, 2006 due to back problems, depression, and anxiety. (R. 227-30, 248.) Plaintiff was born in 1961 and has minimal work history. (R. 227.) Plaintiff's applications were denied initially and upon reconsideration. (R. 103, 126-28.) An administrative law judge (ALJ) conducted a hearing and entered an unfavorable decision on March 7, 2008. (R. 110-21.) After considering new evidence, the Appeals

Council remanded the case to the ALJ for further evaluation. (R. 122-25.) After additional hearings, the ALJ issued a partially favorable decision on June 9, 2010, finding that Plaintiff became disabled on February 3, 2009. The Appeals Council denied Plaintiff's request for review on August 9, 2011. (R. 1-3.) This action followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to her mental impairments, the summary of the record will focus on those impairments, not her back problems.

### A. Medical Records

During the relevant time period between 2006 and 2009, Plaintiff was admitted to Meridian Behavioral Healthcare on multiple occasions, on some instances primarily

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

for her bipolar disorder and at other times for alcohol-related issues. Her mental health treatment has been somewhat sporadic. Medications have been effective, but medication noncompliance and missed appointments are also reflected in Plaintiff's medical records. In addition to treatment at Meridian, Plaintiff also treated at Shands, primarily for her low back pain. The record also contains several evaluations by consulting and state agency physicians, whose opinions were requested after the case was initially remanded by the Appeals Council.

**B. Hearing Testimony**

Three administrative hearings were conducted in this case. At her January 22, 2008 hearing, Plaintiff testified that she experienced depression and anxiety related to the limitations on her physical abilities caused by her back pain. (R. 87.) Plaintiff's second administrative hearing was on April 5, 2010, but she left just prior to the hearing "for unexplained reasons" and did not testify. (R. 57.) At her final administrative hearing on May 7, 2010, Plaintiff testified that she was manic 8-9 months out of the year and could not focus or control her thoughts. She stated that she had lost her friends and her family could not stand to be around her. (R. 44.) At the May 2010 hearing, Plaintiff's stepfather testified that her depression had worsened the past couple years and that her lows had occurred more frequently in the past year. (R. 46, 48.)

**C. Findings of the ALJ**

The ALJ found that Plaintiff became disabled on February 3, 2009. Prior to that date, she had the RFC to perform medium work; due to difficulty concentrating on

complex or detailed tasks, she could only understand, remember and carry out simple job instructions. On February 3, 2009, her RFC changed to sedentary work that was low stress, simple, unskilled, with 1-2-3 step instructions, not in close proximity to co-workers, and not in direct contact with the public. She would have four or more unscheduled absences from work per month. (R. 16-30.)

## IV. Discussion

The issue raised by Plaintiff in her appeal is whether the ALJ's ruling that she became disabled on February 3, 2009–not March 1, 2006 as she alleges–is supported by substantial evidence. Plaintiff contends that there was no difference in her mental health between March 1, 2006 and February 3, 2009, and that the ALJ's conclusion was arbitrary and capricious. (Doc. 12.) For the reasons discussed below, the Court finds that substantial evidence exists to support the ALJ's determination that Plaintiff became disabled on February 3, 2009. The medical evidence is not ambiguous as to the time frame when Plaintiff's condition deteriorated to the point she became disabled. Accordingly, the decision of the Commissioner is affirmed.

Contrary to Plaintiff's assertion that the ALJ's selection of February 3, 2009 as the date disability began was "arbitrary," the ALJ articulated specific reasons for his decision. The ALJ considered opinion evidence from several medical sources between March 2006 and February 2009. For example, Dr. Nazario, a psychologist, evaluated Plaintiff on August 21, 2006 and found her to be appropriate, minimally cooperative, alert, logical, and coherent, with adequate attention, concentration, persistence and pace. He diagnosed bipolar disorder (NOS) and personality disorder. He opined that

Plaintiff might have difficulty interacting with others appropriately. (R. 526-30.)

State agency consultant Martha Putney, Ph.D., opined in August 2006 that Plaintiff had no restrictions of activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace; she found no episodes of decompensation. State agency consultant Angeles Alvarez-Mullin, M.D. reviewed Plaintiff's medical records on October 19, 2006, and opined that Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Alvarez-Mullin found that there was insufficient evidence to opine whether Plaintiff had experienced episodes of decompensation. The ALJ assigned limited weight to Dr. Putney's opinion and moderate weight to Dr. Alvarez-Mullin's opinion, finding that Plaintiff had more restrictions than what was reflected in these opinions.

Treatment records show that Plaintiff was hospitalized at Meridian in March 2006 after a fight with her boyfriend, where she reported that he had not taken any medication for the past two years. She was diagnosed with a manic episode of bipolar disorder and stabilized with medication. (R. 592-601.) She tried Cymbalta for her depression for a short period in 2007. (R. 613, 616.) In November 2007, Plaintiff tried Paxil to alleviate her anxiety, and the physician treating her for her back pain reported that she was "doing very well on the Paxil." (R. 607-10.) In June 2008, Plaintiff returned to Meridian with acute mania secondary to medication noncompliance; she was also abusing alcohol. Abilify and Klonipin were prescribed. When Plaintiff returned for follow upon in August 2008, Abilify was recommended and a Global Assessment of

Functioning ("GAF") of 60 was assigned. (R. 684-687.) In November 2008, Plaintiff was treated for alcohol detox and diagnosed with an alcohol-induced mood disorder. She was discharged in stable condition with a GAF of 60. (R. 655-67.)

Until February 2009, Plaintiff had conservative mental health treatment, and when she experienced crises, she sought treatment and was generally stabilized with medication and released. However, on February 2, 2009, she was hospitalized at Meridian, reporting that she had not slept in several days, was not taking any medications, and was experiencing a manic episode. Her reported symptoms and treatment notes show much more serious symptoms than any prior hospitalizations. Plaintiff was "very clearly impaired" with inappropriate and bizarre manner; agitated motor behavior; abnormal, pressured, circumstantial, and derailed speech; and expansive, labile, dysphoric, and grandiose mood. Her thought process was not linear or intact and she exhibited no judgment or insight. Plaintiff's GAF at admission was 20, and upon discharge it was 40, significantly lower than any of the previous GAFs she received upon discharge from mental health treatment. She was diagnosed with bipolar disorder and substance abuse and given a fair prognosis. (R. 640-57.)

On March 31, 2010, University of Florida College of Medicine social worker Tom Ward summarized Plaintiff's treatment history–noting that she frequently missed appointments but went to 5 psychotherapy sessions in 2007, 3 in 2008, 4 in 2009, and 4 in 2010. Mr. Ward opined that Plaintiff's condition would indefinitely continue to prevent her being able to obtain and maintain substantive employment. (R. 689-91.) The ALJ assigned significant weight to Mr. Ward's opinion. (R. 28.)

In additional to medical opinions and treatment notes, the testimony of Plaintiff and her stepfather at administrative hearings supports the ALJ's determination that Plaintiff became disabled as of February 3, 2009. In 2008, Plaintiff attributed her anxiety and depression to the physical limitations brought on by her back condition. (R. 87.) In 2010, her condition had worsened so that she had alienated her friends and family and spent most of her time in a manic, unfocused state. (R. 44.) Plaintiff's stepfather testified on May 7, 2010 that Plaintiff's depression had "gotten worse in these last couple years" and that her lows had "been happening more frequently . . . this past year." (R. 46, 48.) This testimony contradicts Plaintiff's contention that her condition was the same in 2006 as it was in 2009.

In sum, there is substantial evidence in the record that Plaintiff's mental health status markedly deteriorated on February 3, 2009. Her behavior upon admission and prognosis upon discharge were much more severe than any of her prior hospitalizations, and a subsequent treating source opinion reflects more serious limitations than prior to February 3, 2009. In addition, testimony from Plaintiff and her stepfather support the determination that her condition had in fact worsened recently. The Court, therefore, concludes that the ALJ's determination that Plaintiff became disabled on February 3, 2009 is supported by substantial evidence, including unambiguous medical evidence and hearing testimony.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Defendant and close the file.

**DONE AND ORDERED** this 31st day of October 2012.

s/ Gary R. Jones
GARY R. JONES
United States Magistrate Judge